# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2020

Lyle W. Cayce
Clerk

No. 19-51000

In the Matter of: James Quezada and Simona Quezada,

*Debtors*,

James Quezada; Simona Quezada,

*Appellants*,

*versus*

Internal Revenue Service,

*Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-797

Before Jolly, Jones, and Willett, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

This appeal presents a question of the limitations period for an assessment of tax liability, which in turn depends on the definition of the Internal Revenue Code term, "the return." The Internal Revenue Service assessed James Quezada in 2014 for tax deficiencies dating back to 2005. Quezada contends the assessment is barred by the Internal Revenue Code's

three-year limitations period, which runs from the date "the return" is filed. The courts below held that the limitations period never began to run because Quezada never filed "the return." We disagree. For the reasons that follow, we hold that Quezada filed "the return" that started the limitations clock when he filed forms containing data sufficient to (1) show that he was liable for the taxes assessed and (2) calculate the extent of his tax liability. Because the assessment came more than three years after Quezada filed those forms, the assessment is barred by the limitations period. We VACATE the judgment allowing the assessment and REMAND for entry of judgment in accord with this opinion.

I

James Quezada works as a stone mason and owns Quezada Masonry. General contractors hire him for masonry work, and he hires subcontractors to perform the labor.

Treasury regulations require business owners, like Quezada, to report "[s]alaries, wages, commissions, fees, and other forms of compensation for services rendered aggregating $600 or more." 26 C.F.R § 1.6041-1(a)(1)(i)(A). A Form 1099 is required for each person paid $600 or more. *Id.* § 1.6041-1(a)(2).

A Form 1099 shows the name and address of the payee and how much he was paid. Each payee for whom a payor files a Form 1099 must provide a "Taxpayer Identification Number" (TIN). *See* 26 U.S.C. § 3406(a). A personal identifying number, like a social security number, can serve as a TIN. 26 C.F.R. § 301.6109-1(a)(1)(i). The payor must list the payee's TIN on the Form 1099. *Id.* § 301.6109-1(c). If "the payee fails to furnish his TIN to the payor in the manner required," the payor must withhold a flat rate for all payments to the payee and send the withholdings to the IRS. 26 U.S.C. § 3406(a). This is called "backup withholding"; the flat rate the payor withholds acts as a "backup" in case the payee fails to pay taxes on the underlying payments.

This case concerns amounts Quezada failed to backup withhold for four tax years: 2005, 2006, 2007, and 2008.[1]  For each of those years, Quezada paid subcontractors and reported the payments on Forms 1099, but many of those forms lacked TINs.  Consider 2005.  For that year, Quezada filed 39 Forms 1099; 30 of them lacked TINs.  The next year followed a similar pattern: 28 of 31 forms lacked TINs.  For 2007, 28 of 29 forms lacked TINs.  And, for 2008, 28 of 30 forms lacked TINs.

Because these subcontractors failed to furnish their TINs, the Internal Revenue Code required Quezada to backup withhold from each payment to them.  *See* 26 U.S.C. § 3406(a).  The instructions accompanying each Form 1099 apprised Quezada of this requirement.  And for good measure, the IRS sent Quezada four letters notifying him of the missing TINs and informing him that he needed to backup withhold "if [his] payees ha[d] failed to provide a correct [TIN]."

Congress has empowered the Secretary of the Treasury to prescribe specific "forms and regulations" governing the filing of returns.  26 U.S.C. § 6011(a).  Under treasury regulations, a person required to backup withhold must file a Form 945.  *See* 26 C.F.R. § 31.6011(a)-4(b).  The Form 945 reflects, among other things, the amount that a person has backup withheld over a given tax year.  Because Quezada was required to backup withhold, he should have filed Forms 945 for the relevant tax years.  *See id.*  He failed to do so.  He also failed to indicate on any Form 1099 that he had backup withheld any portion of his payments to subcontractors.

These failures spurred an investigation.  Following that investigation, in 2014, the IRS assessed about $1.2 million against Quezada for amounts he failed to backup withhold from 2005–2008, plus penalties and interest.  This

---

[1] Quezada contends that he was not required to backup withhold because he collected TINs from his subcontractors.  But the bankruptcy court found that he did not collect TINs from all of his subcontractors, and he has not shown that factual finding to be clearly erroneous.

No. 19-51000

assessment came more than three years after Quezada filed Forms 1040 and 1099 for 2008, the last tax year in question.

## II

Quezada filed for bankruptcy in 2016. In the bankruptcy proceeding, the IRS filed a proof of claim for the missing backup withholding. Quezada, in turn, filed an adversary proceeding to determine his tax liability. In that proceeding, Quezada contended that the assessment was barred by the three-year limitations period. There, as here, Quezada said his Forms 1099 and 1040 combined to constitute "the return" that triggered the limitations period. The bankruptcy court disagreed and held that the limitations period never began to run. It thereafter entered judgment for the IRS, holding that the taxes assessed were valid, allowed, and non-dischargeable. The district court affirmed, and Quezada timely appeals.[2]

## III

This appeal raises one overarching question: whether the IRS's assessment of Quezada is barred by the Internal Revenue Code's three-year limitations period. The courts below said no. We review that legal conclusion de novo and any factual findings for clear error. *In re Lothian Oil Inc.*, 650 F.3d 539, 542 (5th Cir. 2011) (citation omitted). Because Quezada aims to apply the limitations period against the IRS, we must strictly construe that statute in the IRS's favor. *See Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984).

## A

The timeliness of the assessment turns on the meaning of "the return" in 26 U.S.C. § 6501(a). Combining to constitute "the return,"

---

[2] Quezada's wife, Simona Quezada, is a party to this appeal and a co-debtor in the bankruptcy case. The IRS did not assess backup-withholding liabilities against her. The courts below referred to James and Simona Quezada jointly as "Quezada," and we do the same.

Quezada contends, are his Forms 1040 and 1099. He says these forms contained sufficient data from which the IRS could calculate his backup withholding liability. If he is right, and his Forms 1040 and 1099 constitute "the return," then the IRS agrees that the 2014 assessment is time-barred. But the IRS disagrees with Quezada's premise: that his Forms 1040 and 1099 can combine to constitute "the return." In the IRS's view, under the facts of this case, only the form that is prescribed by treasury regulations for the specific tax liability at issue—here, the Form 945—can be "the return" that starts the running of the limitations period. To resolve this dispute, we turn to 26 U.S.C. § 6501.

We start with the text. Section 6501(a) sets out a "[g]eneral rule" requiring the IRS to assess a tax "within 3 years after the return was filed[.]" 26 U.S.C. § 6501(a). "[T]he return" means "the return required to be filed by the taxpayer[.]" *Id.* If the taxpayer fails "to file a return," the IRS may assess the tax "at any time." *Id.* § 6501(c)(3).

This "[g]eneral rule" "rests on a pragmatic consideration associated with 'the system of self-assessment which is so largely the basis of our American system of . . . taxation. The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.'" *Law Office of John H. Eggertsen, P.C. v. Comm'r*, 800 F.3d 758, 763 (6th Cir. 2015) (quoting *Comm'r v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944)).

Here, Form 945 is the form that treasury regulations prescribe for reporting backup withholding. *See* 26 C.F.R. § 31.6011(a)-4(b). Form 945 is thus the "return required to be filed by" a taxpayer who, like Quezada, is required to backup withhold. 26 U.S.C. § 6501(a). Quezada failed to file a Form 945. So, the argument goes, he never filed "the return," and the limitations period never began to run under § 6501(a)'s "[g]eneral rule." The IRS thus contends the analysis ends here: Form 945 is the only

document that can constitute "the return," and Quezada failed to file it. Appeal concluded. In support of its argument, the IRS invokes *Lane-Wells*, which the IRS construes to create a *per se* rule requiring the taxpayer to file the return designated for the tax liability at issue; if the taxpayer does not file that specific return, the limitations clock never begins to run.

We read *Lane-Wells* differently. There, the taxpayer filed corporate returns (Form 1120) but failed to file personal holding company returns (Form 1120H) in the mistaken belief that it was not a personal holding company. *Lane-Wells*, 321 U.S. at 220. The IRS assessed some of the taxes more than three years after the taxpayer filed corporate returns for the relevant tax years. *Id.* at 220. So, if the corporate returns started the limitations clock, the IRS would have been barred from collecting some of the taxes. *Id.* at 222–23. The Supreme Court ruled for the IRS, holding that the corporate returns did not start the limitations clock. *Id.* at 224. In so holding, the Court emphasized that "the returns did not show the facts on which liability would be predicated." *Id.* at 223. Given that emphasis, we find unpersuasive the IRS's contention that *Lane-Wells* eliminates the possibility that a form other than the one prescribed by treasury regulations can be "the return." Certainly, the Court did not say that it was announcing so inflexible a rule. *Id.* at 220–25. And, indeed, some of the Court's statements suggest the opposite—that the wrong form can be "the return" so long as the form shows the facts on which liability could be predicated. *Id.* at 223.

The IRS does not cite any opinion that adopts its reading of *Lane-Wells*, perhaps because none can be found. In fact, the IRS's reading clashes with the readings of several circuits; the Second, Sixth, Ninth, Eleventh, and Federal Circuits have recognized that a form other than the one prescribed by treasury regulations can be "the return." *See Eggertsen*, 800 F.3d at 763; *Springfield v. United States*, 88 F.3d 750, 752 (9th Cir. 1996); *Siben v. Comm'r*, 930 F.2d 1034, 1036 (2d Cir. 1991); *Neptune Mut. Ass'n, Ltd. of Bermuda v.*

*United States*, 862 F.2d 1546, 1555 (Fed. Cir. 1988); *Atl. Land & Imp. Co. v. United States*, 790 F.2d 853, 858 (11th Cir. 1986).

Accordingly, consistent with a plurality of our sister circuits, we think the better reading of *Lane-Wells* is that the taxpayer is not required to file the precise return prescribed by treasury regulations in order to start the limitations clock. Instead, "the return" is filed, and the limitations clock begins to tick, when the taxpayer files a return that contains data sufficient (1) to show that the taxpayer is liable for the tax at issue and (2) to calculate the extent of that liability. *See Lane-Wells*, 321 U.S. at 223; *Germantown Trust Co. v. Comm'r*, 309 U.S. 304, 308–09 (1940). We now turn to Quezada's Forms 1040 and 1099 to determine whether they constitute "the return" under this standard.

1

We first ask whether Quezada's Forms 1040 and 1099 contained data sufficient to show that Quezada was liable for the backup-withholding taxes assessed. *See Lane-Wells*, 321 U.S. at 223. We quickly conclude that they did. The IRS could determine that Quezada was liable for backup-withholding taxes by looking to the face of his Forms 1099; if a particular form lacked a TIN, then Quezada was liable for backup-withholding taxes applied to the entire amount he paid to that subcontractor. *See* 26 U.S.C. § 3406(a).

2

We next ask whether Quezada's Forms 1040 and 1099 contained data sufficient to calculate the extent of Quezada's backup-withholding liability. *See Germantown Trust*, 309 U.S. at 308. As relevant here, those forms disclosed two things: first, the amount Quezada paid each individual subcontractor, and second, whether Quezada obtained a TIN for the particular subcontractor. For every Form 1099 Quezada filed with a blank TIN line, the backup-withholding requirement applied to the entire amount paid to that subcontractor. *See* 26 U.S.C. § 3406(a). For each subcontractor

who failed to supply a TIN, the IRS could determine the amount Quezada should have backup withheld by multiplying the statutory flat rate for backup withholding by the amount Quezada paid the subcontractor. Summing those amounts for all Forms 1099 with missing TINs yielded Quezada's total backup-withholding liability; penalties and interest were then formulaically calculated on the basis of that total. That is how the IRS could—*and, in fact, did*—calculate the amount of backup-withholding taxes to assess against Quezada.

*        *        *

Accordingly, because Quezada's Forms 1040 and 1099 contained data sufficient (1) to show that Quezada was liable for the backup-withholding taxes assessed and (2) to calculate the extent of Quezada's backup-withholding liability, those forms constitute "the return" that triggers the Internal Revenue Code's three-year assessment limitations period. *See Lane-Wells*, 321 U.S. at 223; *Germantown Trust*, 309 U.S. at 308–09. Because the IRS assessed Quezada's backup-withholding liabilities more than three years after Quezada filed Forms 1040 and 1099 for the relevant tax years, the assessment is barred by the limitations period. *See* 26 U.S.C. § 6501(a).

IV

We now sum up. In this opinion, we have held that Quezada's Forms 1040 and 1099 constitute "the return" that begins the running of the Internal Revenue Code's three-year assessment limitations period. Because the IRS assessed Quezada more than three years after Quezada filed those forms, the assessment is barred by the limitations period. Consequently, we VACATE the district court's judgment affirming the bankruptcy court's judgment with respect to the dischargeability of the taxes assessed. We REMAND the case to the district court with instructions to remand the case to the bankruptcy court for entry of judgment in accord with this opinion.

VACATED AND REMANDED.